UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUSTIN CAREY, et al.,<br><br>              Plaintiffs,<br>    v.<br><br>JAY INSLEE, et al.,<br><br>              Defendants. | CASE NO. 3:18-cv-05208-RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT<br><br>DKT. #48 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Washington Education Association's ("WEA") Motion to Dismiss or for Summary Judgment.[1] WEA is a public sector union that, until recently, collected fees from nonunion members in accordance with the Supreme Court's holding in *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977). Under *Abood*, unions could forcibly collect fees from nonmembers as a condition of employment as long as those fees were put toward collective bargaining rather than political or ideological activities. *Id.* at 235. However, on June 27, 2018, the Supreme Court overruled *Abood* in *Janus v. American Federation of State,*

---

[1] The motion was originally filed as a Motion for Judgment on the Pleadings or Summary Judgment. However, after Plaintiffs moved for leave to file an amended complaint [Dkt. #55], WEA requested that the Court treat its motion as a Motion to Dismiss or for Summary Judgment. Dkt. #57.

*County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). The Court held that collecting fees from nonconsenting public sector employees violates the First Amendment, regardless of how the fees are spent.

Plaintiffs Justin Carey, JoBeth Deibel, David Gaston, Roger Kinney, and Keith Sanborn are public school employees who work in bargaining units represented by WEA but are not union members themselves. Prior to June 27, 2018, the collective bargaining agreements governing Plaintiffs' units required them to pay agency fees to WEA, which were deducted from their paychecks. This practice was authorized under Washington law. *See* RCW 41.59.060, 41.59.100. However, on June 27, 2018, WEA and the State Defendants sent out communications discontinuing the practice of forcibly collecting fees from nonunion employees. WEA's records indicate that no agency fees have been deducted from Plaintiffs' paychecks since June 27 and that the school districts where Plaintiffs work have stopped collecting fees from nonunion workers.

A few months before the *Janus* opinion was announced, Plaintiffs sued WEA and the State Defendants seeking a declaration that the laws and collective bargaining agreements permitting public-sector unions to collect agency fees from nonunion members are unconstitutional. Plaintiffs also seek injunctive relief against all future collection of agency fees from nonunion members. Finally, and most controversially, Plaintiffs assert a § 1983 claim based on violation of their First Amendment rights, as well as state law claims for conversion, trespass to chattels, replevin, restitution, and unjust enrichment that Plaintiffs recently added in their First Amended Complaint. *See* Dkt. #55-1, at 8. Plaintiffs request that the Court order WEA to "disgorge and refund" all agency fees collected from Plaintiffs and any certified class members. Dkt. # 55-1, at 9.

In its Motion, WEA asks the Court to dismiss Plaintiffs' claim for injunctive relief as moot because WEA has already changed its policy to stop collecting fees from nonunion members. WEA similarly argues that declaratory relief is unnecessary because *Janus* already declared the relevant conduct unconstitutional. WEA contends that Plaintiffs' § 1983 claim for monetary relief must also be dismissed because WEA acted in good-faith reliance on then-valid Washington law when collecting fees from nonunion members. If the Court grants WEA's Motion, WEA requests that the Court decline to exercise jurisdiction over the remaining state law claims. For the following reasons, WEA's Motion is GRANTED.

**DISCUSSION**

**I.  Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an

---

[2] While WEA moved for dismissal or summary judgment, the Court has considered declarations and exhibits submitted by WEA and will therefore apply the summary judgment standard.

element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Mootness

WEA argues that Plaintiffs' claim for injunctive relief is moot because WEA ceased collecting agency fees from nonunion members immediately after the *Janus* decision was published. WEA also asserts that the doctrine of "voluntary cessation" does not apply because WEA ceased fee collection in response to an intervening change in law, not litigation. In any case, even if WEA's cessation of fee collection could be characterized as voluntary, WEA argues that there is no reasonable expectation that the practice will continue. Finally, WEA contends that declaratory relief is uncalled for because the *Janus* decision itself already declared unconstitutional the compulsory payment of agency fees.

Plaintiffs respond with two incongruous arguments. First, Plaintiffs argue that *Janus* did not "change" the law at all, but rather corrected the Court's misinterpretation in *Abood* and announced what the Constitution has always mandated. Second, Plaintiffs contend that this non-change in the law imposes no new requirements on those who were not parties to the suit. In

other words, despite holding that the practices of unions like WEA have always been unconstitutional, WEA has "no formal legal obligation" to conform to the ruling. Dkt. #53, at 2.

1.   *Injunctive Relief*

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971–72 (9th Cir. 2014) (internal quotations and citation omitted). "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). However, "the voluntariness of the cessation is a factor, rather than a clincher." *Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000). Consequently, a case may still be moot if the record shows that "(1) it can be said with assurance that 'there is no reasonable expectation . . . ' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)). For example, an agency's change in position may moot a case if it is clear that the shift is permanent rather than temporary. *Id.* (describing *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)).

"[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, . . . but it may do so in certain circumstances." *Rosebrock*, 745 F.3d at 971. When an entity changes its policy not in response to a statutory or regulatory shift, mootness is more likely if: "(1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures that the Government officials took against the plaintiffs in the

case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time ...; and (5) since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff." *Id*. at 972 (internal citations and quotations omitted).[3]

The Court need not decide whether the Supreme Court's decision in *Janus* qualifies as a "change in law" because the circumstances of WEA's policy change moot the controversy even if viewed as voluntary. On June 27, 2018, the day *Janus* was announced, the Section Chief of the Labor Relations Section of the State Human Resources Division of the Washington State Office of Financial Management emailed all state employee unions that negotiate with the governor. Dkt. #30, at 2. The email informed them that the State planned to "stop fee deductions from nonmembers by the July 10th pay day" to abide by *Janus*. *Id*. at Ex. A. A second email on July 2 to the unions instructed them to "provide dues cards that are consistent with the *Janus* decision to the agencies who employ your bargaining unit members." *Id*. at Ex. B.

Also on June 27, 2018, the Chief Financial Officer for WEA sent a letter to the superintendents for each employer that collected fees from individuals represented by WEA and its affiliates. Dkt. #34, at 4. That letter explained that, in light of *Janus*, WEA had "decided that [it would] no longer seek to deduct representation fees from non-members of the association." *Id*., Ex. A. The letter went on to request that "payroll officers stop all Fee Payers' deductions immediately." *Id*. It also explained WEA's intention to "take care of any rebates of fees deducted in the event it wasn't possible to immediately stop the deductions this month given the timing of the decision." *Id*.

---

[3] The analysis from *Rosebrock* concerned governmental policy, but it is equally applicable here where WEA carried out a government function. *See Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1084 (W.D. Wash. 2018) (applying the reasoning from the court's former order dismissing the claims against the state defendants as moot to the claims against the union defendant).

This policy language emanating from both the State and WEA is "broad in scope and unequivocal in tone." *See Rosebrock*, 745 F.3d at 972. The announcements' firmness is bolstered by their issuance immediately after *Janus* was decided, indicating that the State and WEA viewed their prior practice of collecting fees from non-members as incompatible with the new holding. WEA's intention to permanently change their practices is further evidenced by the "reconciliation process" through which WEA refunds any employees who may have had fees deducted after *Janus* was decided. Dkt. #34, at 4. Finally, the combined impact of both the State's and WEA's policy shifts are mutually-reinforcing and further suggest their lasting effect. This Court will therefore join others in viewing the union's communications as reliable evidence of a permanent shift in policy. *See, e.g., Cook v. Brown*, No. 6:18-CV-01085-AA, 2019 WL 982384, at *4 (D. Or. Feb. 28, 2019); *Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1084 (W.D. Wash. 2018).

Application of the remaining factors from *Rosebrock* also suggests mootness. This lawsuit was a direct reaction to *Janus*, so WEA's decision to comply with *Janus* on its own addresses the "objectionable measures" that Plaintiffs complained of. Indeed, Plaintiffs have provided no credible evidence or theories about how WEA's policy shift could fail to address his concerns. *Janus* was also the catalyst for WEA's new policy, and while the policy has not been in place for long there is no evidence that WEA has deviated from it. Indeed, it would be highly illogical for WEA to revert its practices back to their pre-*Janus* state unless the Supreme Court again changed course. To do so would be inviting litigation by directly violating a constitutional decree. Consequently, Plaintiffs' request for prospective injunctive relief against WEA is dismissed as moot.

2.  *Declaratory Relief*

The fact that Plaintiffs' request for injunctive relief is moot does not necessarily moot his request for declaratory relief. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121-22 (1974). "The test for mootness in the declaratory judgment context is whether there is a substantial controversy between parties with adverse legal interests that are sufficiently immediate to warrant declaratory relief." *Cook*, 2019 WL 982384, at *4 (citing *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th Cir. 2002)).

Here, for reasons already explained, there is no immediate legal controversy. The state and WEA have ceased the activities that Plaintiffs complained of and have shown that there is little possibility of their resumption. While Plaintiffs are correct that *Janus* does not directly bind WEA because it was not a party to the case, the same could be said of every Supreme Court ruling that conflicts with state laws previously on the books. But when the defendants have convincingly proven that they intend to cease following those laws, the mere speculative possibility that others could rely on them in the future to the plaintiff's detriment is insufficient to overcome mootness. *See Cook*, 2019 WL 982384, at *4-5. Plaintiffs' request for declaratory relief is therefore dismissed as moot.

**IV. Section 1983 Claim and the Good Faith Defense**

WEA argues that the Court must dismiss Plaintiffs' claims seeking reimbursement of all agency fees paid to WEA prior to the *Janus* ruling. According to WEA, it cannot be held liable because it collected the fees in good-faith reliance on then-valid Washington law. *See* RCW 41.59.060, 41.59.100; *Abood*, 431 U.S. 209. Plaintiffs first respond that WEA's good faith defense fails because private parties may only assert the good faith defense in § 1983 cases where the corresponding common law tort also allows for such a defense, and WEA cannot

satisfy that requirement here. Second, Plaintiffs contend that the good faith defense requires evidence of the defendant's subjective state of mind, which WEA has not provided. Plaintiffs also suggest that WEA had subjective knowledge that *Abood* would be overruled because of the Supreme Court's warnings to that effect. Third, Plaintiffs argue that WEA cannot assert the good faith defense because it has not shown it complied with pre-*Janus* case law. Finally, Plaintiffs contend that WEA's good faith defense does not confer immunity from claims for equitable monetary relief such as restitution and unjust enrichment.

In *Wyatt v. Cole*, the Supreme Court held that a private party sued under § 1983 is not automatically entitled to qualified immunity. 504 U.S. 158, 168-69 (1992). However, the Court left it an open question whether some other form of good faith defense could be available to private parties. *Id*. The concurrence and dissent implied even more strongly than the majority that private parties may assert such a defense. *Id*. at 175 (Kennedy, J., concurring) (explaining that it "ought to be open to the defendants to show good faith" on remand); *id.* at 177 (Rehnquist, C.J., dissenting) (stating that the defendants should be able to escape liability by showing that they acted without malice or with probable cause). On remand, the Fifth Circuit followed the bread crumbs from the Court's three separate opinions and held that a private party sued under § 1983 may avoid liability if they acted in good faith. *See Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

Although not entirely consistent in their approaches, every circuit court to address the question has held that some type of good faith defense is available to private parties sued for constitutional violations. *See Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys*, P.C., 76 F.3d 692, 698-99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994). In *Clement*

*v. City of Glendale*, the Ninth Circuit joined this club by holding that the defendant could assert a good faith defense in a § 1983 action where the plaintiff alleged that a private towing company unconstitutionally seized their vehicle without notice. 518 F.3d 1090, 1097 (9th Cir. 2008).

Circuit courts disagree about precisely what standard should apply in the good faith analysis. *Compare Wyatt*, 994 F.2d at 1118 ("[P]rivate defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity.") *with Jordan*, 20 F.3d at 1277 ("'good faith' gives state actors a defense that depends on their subjective state of mind."); *see also Franklin v. Fox*, No. C 97-2443 CRB, 2001 WL 114438, at *5 (N.D. Cal. Jan. 22, 2001) (collecting cases). The Ninth Circuit has thus far expressed no position regarding the proper standard but appeared to apply mostly subjective considerations in *Clement*. 518 F.3d at 1097. Because these cases all somehow condition the plaintiff's success on the defendant's belief regarding constitutionality, a subjective standard appears appropriate.[4]

This means that WEA cannot be liable under § 1983 if it believed that the collection of agency fees from nonunion members was lawful. Both the allegations in the Complaint and the evidence presented by WEA indicate that it did. Although the First Amended Complaint alleges that WEA *expected* the Supreme Court to overrule *Abood*, such an expectation cannot produce subjective belief in unconstitutionality when the defendant is also aware that the prior holding

---

[4] Many courts have imposed the burden of disproving the defendant's good faith on the plaintiff. The concurrence and dissent in *Wyatt* explained that it is "somewhat of a misnomer to describe the common law as creating a good faith *defense*." 504 U.S. at 174 (Kennedy, J., concurring); *id.* at 176 n.1 (Rehnquist, C.J., dissenting). This is because the idea of good faith actually derives from the malice and lack of probable cause elements of malicious prosecution and abuse of process at common law. *Id*. Consequently, Justice Kennedy explained that the burden of proof is on the plaintiff to "come forward with facts from which bad faith can be inferred." 504 U.S. at 174 (Kennedy, J., concurring). Several circuit courts have followed this approach but the Ninth Circuit has not taken a position. *See Clement*, 518 F.3d at 1097; *Pinsky*, 79 F.3d at 312; *Jordan*, 20 F.3d at 1278; *Wyatt*, 994 F.2d at 1119. Because the result is the same in this case whether the burden belongs to the plaintiff or defendant, the Court will not decide which approach is correct.

has not been overruled. *See* Dkt. #61, at 5. In other words, a defendant's expectation about future unconstitutionality is irrelevant because a defendant's own beliefs about what the constitution says hold no weight if they clash with their knowledge of clear judicial precedent. If anything, a defendant's belief that a prior holding will be overruled only serves to emphasize their awareness of a binding constitutional decree.

All of the evidence shows that WEA consciously relied on a then-valid Washington statute. WEA had a practice of tracking which employees were nonunion members or religious objectors and WEA immediately shifted its procedures to comply with *Janus* after the decision was handed down. *See* Dkt. #34, at 2, 4; *id.* at Ex. A. This evidences WEA's knowledge of the relevant constitutional requirements. In any case, Plaintiffs have presented no facts or allegations demonstrating that WEA acted with complete legal ignorance of *Abood*'s holding, and no amount of discovery will allow Plaintiffs to prove something that both the evidence and common sense contradict. WEA collected agency fees from nonunion members because it correctly believed that doing so was lawful at the time. It therefore may assert the good faith defense.

Plaintiffs set forth a variety of arguments against application of the good faith defense. Those arguments are addressed more fully below.

1. *Availability of the Good Faith Defense based on Common Law Tort Analogy*

Plaintiffs first contend that *Wyatt* established a "rule" under which a defendant may only assert the good faith defense if it would be available under the common law tort most analogous to the plaintiff's § 1983 claim. Consequently, Plaintiffs argue, WEA cannot assert the defense because the proper common law analogue in this case is conversion, which has no scienter requirement and thus no possibility of a good faith defense.

The Court's holding in *Wyatt* was far narrower, and the dicta far murkier, than Plaintiffs present it. Justice O'Connor made clear that the Court's ruling was limited to the "very narrow" question of whether a private defendant could be shielded by qualified immunity. *Wyatt v. Cole*, 504 U.S. at 168. And while the Court did discuss common law analogues in dicta, that discussion was largely in reference to the history of qualified immunity. *See id.* at 163-64. The Court did not comment on whether the good faith defense for private defendants should be "completely reformulated" to deviate from the common law in the same way qualified immunity has been. *Id*. at 166. The concurrence cautioned against such a move, but the dissent was more amenable. *Id.* at 173 (Kennedy, J., concurring); *id.* at 177-79 (Rehnquist, C.J., dissenting). In any case, *Wyatt* did not clearly limit the good faith defense to § 1983 claims with specific common law analogues.

Insofar as courts have analyzed the common law analogue to a plaintiff's § 1983 claim, none have done so to bar the good faith defense. *See, e.g., Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996) (discussing *Wyatt* and finding that the § 1983 claim was analogous to malicious prosecution); *Franklin v. Fox*, No. C 97-2443 CRB, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (noting that the claim for violation of the Sixth Amendment right to counsel "is not easily analogized to the common law torts of malicious prosecution or abuse of process" for purposes of determining which party bears the burden but proceeding to apply the good faith defense anyway). In *Clement*, the Ninth Circuit gave no indication of whether a certain common law tort analogue is necessary for a private party to assert the good faith defense. 518 F.3d at 1097.

Whether or not the good faith defense is universally available to private defendants in § 1983 actions, such a distinction would not impact the availability of the defense to WEA because Plaintiffs' claim is not analogous to conversion. As WEA explains, when the Civil

Rights Act was promulgated in 1871, the common law did not recognize an action for conversion where all that was taken was money. *See Wyatt*, 504 U.S. at 164. This is because money was considered "intangible." *See* 5A M.L.E. Conversion § 15 ("The general rule is that monies are intangible and, therefore, not subject to a claim for conversion.").

Conversion is also a bad analogue because it does not account for the fact that Plaintiffs' constitutional claim is rooted in the First Amendment. *See Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); *Cook v. Brown*, No. 6:18-CV-01085-AA, 2019 WL 982384, at *6 (D. Or. Feb. 28, 2019). Plaintiffs do not just claim that WEA unjustly took his money; they claim that WEA utilized a state statute to violate their First Amendment rights by compelling them to support union activities. *See* Dkt. #61, at 4, 7. Consequently, "[a] dignitary tort, such as defamation, or tortious interference with a contract or business expectancy, more closely resembles the First Amendment claim." *Danielson*, 340 F. Supp. 3d at 1086. Alternatively, abuse of process is also a good analogue that accounts for WEA's reliance on RCW 41.59.060 and 41.59.100 to collect the fees. *See Cook*, 2019 WL 982384, at *6. Because these torts do have scienter requirements, the good faith defense is available to WEA.

2. *The Requirements of the Subjective Belief Standard*

Plaintiffs argue that the Court cannot decide whether WEA acted in good faith because the good faith defense has a subjective standard and WEA has not provided evidence of its officers' state of mind. According to Plaintiffs, it is entirely possible that WEA expected the Supreme Court to overrule *Abood* because the Court had previously given indications that *Abood*'s constitutionality was uncertain. *See, e.g., Harris v. Quinn*, 134 S. Ct. 2618, 2632-34 (2014). Plaintiffs point out that even the *Janus* decision itself observed that "public-sector unions

have been on notice for years regarding this Court's misgivings about *Abood*." 138 S. Ct. at 2484. Plaintiffs therefore argue that they should be allowed to conduct discovery to determine whether WEA believed *Abood* would be overruled as unconstitutional.

Although the Court has already rejected this application of the subjective standard, Plaintiffs' approach is untenable for several weighty reasons that warrant additional discussion. First, the roots of the good faith defense suggest that good faith may be decided as a matter of law when the defendant relied upon a valid statute. Justice Kennedy observed this in his *Wyatt* concurrence, alluding to *Birdsall v. Smith*'s proclamation that "[e]very statute should be considered valid until there is a judicial determination to the contrary, and these defendants had a right to act upon such assumption." 504 U.S. at 158 (Kennedy, J., concurring) (citing 158 Mich. 390, 394 (1909).[5] Here, WEA had a similar right to act on the assumption that RCW 41.59.060 and 41.59.100 were valid law, despite any Supreme Court insinuations that stopped short of overruling *Abood*. As courts have observed, any other approach would require "telepathy" on the part of defendants. *See Danielson*, 340 F. Supp. 3d at 1086; *Winner v. Rauner*, 2016 WL 7374258 *5 (N.D.Ill. 2016).

Second, Plaintiffs' take on the good faith defense would create chaos in constitutional interpretation. Plaintiffs' position is premised on the idea that judicial decisions do not change the law but merely interpret what it has always said. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993); Dkt. #53, at 1. This theoretically opens the door for a private individual's ideas to align with the Constitution even when the judiciary had previously held something different, so long as that holding is eventually reversed. However, until Americans

---

[5] Importantly, this observation came in the midst of Kennedy's discussion of the common law roots of any potential good faith defense, not during a discussion of qualified immunity.

can time travel to read the opinions of the Supreme Court's final iteration, this application of *Harper* would give rise to a chaotic form of constitutional gambling. Legal fictions aside, there are myriad factors that influence constitutional interpretation. *See, e.g.*, Adam M. Samaha, *Dead Hand Arguments and Constitutional Interpretation*, 108 Colum. L. Rev. 606, 633 (2008) (explaining the disagreements about the purpose of constitutional interpretation); Thomas B. Colby & Peter J. Smith, *Living Originalism*, 59 Duke L.J. 239 (2009) (explaining disagreements among adherents to originalism). As long as such inconsistency exists, it would be a mistake to punish individuals who adhered to the law while aware that it may fluctuate in the future.

Finally, and perhaps most importantly, Plaintiffs' approach would have the practical effect of destabilizing the very role of the judiciary. As Chief Justice Marshall established in 1803, "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). But if a defendant's personal beliefs or expectations about the constitution could legally bind their actions, *Marbury*'s pivotal holding would be thrown into doubt. Stripped of the security provided by unequivocal precedent, private individuals would be forced to become constitutional scholars tasked with deciding if they truly agree with the Supreme Court's reasoning to avoid future liability. Even worse, those who disagreed with a ruling and deeply believed the Court would eventually overturn it would be forced to choose between their own convictions and the Court's. In a time when American society is as divided as ever about the meaning of the constitution, embracing Plaintiffs' approach would have pernicious effects.

This does not mean that the subjective good faith defense is coextensive with qualified immunity. For example, in a situation where a broad constitutional holding may or may not apply to a novel fact pattern, qualified immunity would apply if it was not "clearly established"

1 | that the holding extended to the new scenario. *See, e.g., Thomas v. Dillard*, 818 F.3d 864, 871

2 | (9th Cir. 2016) (concluding that, although the domestic violence nature of an investigation does

3 | not automatically create reasonable suspicion, this was not clearly established at the time the

4 | officer detained the plaintiff). In contrast, the good faith defense would not shield a defendant so

5 | long as they genuinely believed the prior holding applied to the new scenario, regardless of

6 | whether this was "clearly established" at the time.

But this case does not involve a novel application of a broad constitutional holding; instead, it involves the exact type of conduct that the Court had sanctioned in a previous case. It therefore does not matter how many "warnings" the Court may have given about its intention to overrule *Abood*. Until it actually did so, *Abood* was the law of the land and WEA's conscious compliance with that ruling can establish its good faith as a matter of law.

3. *Compliance with Pre-*Janus *Case Law*

As a backup plan, Plaintiffs argue that WEA cannot assert the good faith defense because it has not proven that it complied with *Abood*'s requirement that unions only collect fees from non-members if those fees go toward non-ideological activities. *See* 431 U.S. at 239-40. WEA responds that Plaintiffs' Complaint does not allege that WEA failed to comply with *Abood*. In any case, WEA argues that this is a different claim that would not preclude the application of the good faith defense to Plaintiffs' claim that he is entitled to retroactive compensation based on *Janus*.

WEA is correct on both points. Although Plaintiffs amended their Complaint to basically re-state the legal argument contained in their Opposition brief, this is not a "plausible" allegation that WEA violated the pre-*Janus* requirements for collecting fees from nonunion members. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, even if WEA does carry the burden of

proving its good faith compliance with the law (which seems doubtful), this does not mean that it must prove its compliance with *every* law. Rather, to assert the defense, WEA need only have believed that the complained-of conduct was constitutionally valid at the time. *See Wyatt*, 994 F.2d at 1120 (defendant can only be liable if they "knew or should have known of the statute's constitutional infirmity"). Here, the complained-of conduct was forcibly collecting fees from non-members, which was later held to be unconstitutional in *Janus*. However, because WEA correctly relied on a then-valid statute in collecting fees, it may assert the good faith defense.

4. *The Good Faith Defense's Application to Equitable Claims*

Finally, Plaintiffs contend that the good faith defense can only shield a defendant from damages and does not apply to claims for equitable relief, such as restitution or unjust enrichment. *See Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975); *Brown v. Bathke*, 566 F.2d 588, 593 (8th Cir. 1977) (citing *Wood* in holding that qualified immunity "applies only to damages, not to equitable relief"). WEA responds that the facts alleged by Plaintiffs do not support an equitable remedy because WEA relied on a presumptively valid statute in collecting the fees and because Plaintiffs had no expectation of a refund and received the benefit of collective bargaining representation. WEA also argues that Plaintiffs' claim simply does not sound in equity because the fees have dissipated and cannot be traced.

A plaintiff may not circumvent qualified immunity or the good faith defense simply by labeling a claim for legal damages as one for equitable restitution. *See Lenea v. Lane*, 882 F.2d 1171, 1178–79 (7th Cir. 1989) ("Regardless of what label is placed on the monetary relief which Lenea wants, 'equitable' or 'legal damages,' it remains a personal monetary award out of the official's own pocket."); *see also Clanton v. Orleans Par. Sch. Bd.*, 649 F.2d 1084, 1101 (5th Cir. 1981) (rejecting the "distinction between equitable and legal relief for purposes of the

qualified immunity defense"). In other words, Plaintiffs cannot save their claim through a mere "semantic exercise" if equitable relief is not actually available. *Lenea*, 882 F.2d at 1179.

There are several reasons why it is not. First, WEA's reliance on RCW 41.59.060 and 41.59.100 is incompatible with equitable relief. "Absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 427 (8th Cir. 2007) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)); *see also Gilpin v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*, 875 F.2d 1310, 1316 (7th Cir. 1989) (holding that nonunion employees' claim for restitution was actually for punitive damages when the union had acted lawfully by conferring benefits to the employees). WEA relied on a presumptively valid statute when collecting fees from Plaintiffs, and there are no other indications of bad faith. There is also no allegation or evidence that WEA failed to confer benefits on Plaintiffs by using their fees to negotiate on his behalf.

Second, Plaintiffs cannot obtain equitable monetary relief for more practical reasons. "[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). "But where the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Id*. at 213-14 (internal quotations omitted). Here, Plaintiffs' entire case is premised on WEA taking their money and

using it to fund union activities. *See* Dkt. #55-1, at 4. This presupposes that Plaintiffs' money could not "clearly be traced," meaning restitution cannot "lie in equity." *Knudson*, 534 U.S. at 213-14. Plaintiffs' attempt to plead their way out of the good faith defense is thus unsuccessful and their claim for monetary damages is dismissed.

**IV.     State Law Claims**

In the First Amended Complaint, Plaintiffs assert additional state law claims for "conversion, trespass to chattels, replevin, restitution, unjust enrichment, and any other state-law cause of action that offers relief for this unlawful seizure of their personal property." Dkt. #55-1. WEA argues that the Court should decline to exercise jurisdiction over these claims, which were added for the first time nearly a year after this case began.

Federal courts have supplemental jurisdiction over related state law claims as long as the case also involves federal claims invoking the court's original jurisdiction. 28 U.S.C.A. § 1367(a). However, a court may decline to exercise jurisdiction when all claims over which it had original jurisdiction have been dismissed. § 1367(c)(3). "A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, dismissal is clearly warranted. Not only have all of Plaintiffs' federal claims been dismissed, but the remaining state law claims were not even part of the case until a few weeks

ago. Allowing a plaintiff's case to continue in federal court because of a late-stage amended complaint indiscriminately tacking on state law claims would be unfair, uneconomical, and contrary to principles of comity. Plaintiffs' state law claims are thus dismissed without prejudice.

**CONCLUSION**

For the above reasons, WEA's Motion to Dismiss or for Summary Judgment [Dkt. #48] is GRANTED. Plaintiffs' state law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

Dated this 11th day of March, 2019.

Ronald B. Leighton
United States District Judge